UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:17-CR-00010-JHM

UNITED STATES OF AMERICA                                                         PLAINTIFF

VS.

WILLIAM DUKES, JR.                                                                      DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion by defendant William Dukes, Jr., for a directed verdict of acquittal or, in the alternative, for a new trial. (DN 58.) Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

Dukes was convicted by a jury of one count of deprivation of rights under color of law, pursuant to 18 U.S.C. § 242. At trial, the jury heard evidence that Dukes was an officer with the Providence Police Department in Webster County, Kentucky, when he arrested Jeffrey Littlepage at his home for the misdemeanor offense of harassing communications. Littlepage had twice called the Providence Police Department on May 26, 2016, to file a complaint against Dukes related to a traffic stop the previous day. Dukes answered the phone on both occasions, told Littlepage that he needed to call back during business hours to file a complaint, and instructed him on the second call that he would be charged with harassing communications if he called again. Littlepage did not call the Providence Police Department again, but he did contact dispatchers at both the county and state level to get more information about filing a complaint. Dukes became aware of these other calls, and he drove to Littlepage's residence to arrest him without a warrant. Upon arriving, Littlepage stated that he was not going to go to jail for something that he did not

do, and a physical altercation ensued inside Littlepage's home. Dukes deployed his taser and struck Littlepage in the face, breaking his nose.

Dukes was charged with two counts of deprivation of rights under color of law for arresting Littlepage without probable cause (Count I) and in retaliation for exercising his constitutional rights (Count II), as well as one count of document falsification (Count III). The jury convicted him of Count I, finding that he caused bodily injury to Littlepage or used a dangerous weapon in committing the crime. Dukes was acquitted of Counts II and III. He has now moved for a directed verdict of acquittal on Count I or, in the alternative, for a new trial.

## II. STANDARD OF REVIEW

A Rule 29 motion for judgment of acquittal "is a challenge to the sufficiency of the evidence." *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). "Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002)); *United States v. Harrod*, 168 F.3d 887, 889-90 (6th Cir. 1999). "In ruling on a sufficiency of the evidence challenge, the Court does not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury." *United States v. Cannady*, 2006 WL 1718193, *2 (E.D. Ky. June 21, 2006).

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision of whether to grant a new trial is committed to the "sound discretion of the trial judge." *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982); *United States v. Pierce*, 62 F.3d 818, 823 (6th

Cir. 1995). When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses. "It has often been said that he/she sits as a thirteenth juror." *United States v. Solorio*, 337 F.3d 580, 589 n. 6 (6th Cir. 2003) (internal citations omitted). However, "new trial motions are disfavored and should be granted with caution." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) (citation omitted). The trial court should exercise this discretion "only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). The defendant bears the burden of proving that a new trial should be granted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994); *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

### III. DISCUSSION

#### A. MOTION FOR DIRECTED VERDICT

Dukes' motion for a directed verdict of acquittal focuses on the testimony of one witness: Thomas Szurlinski, who testified for the United States on the training he provided Dukes and offered his opinion on whether Dukes acted lawfully when he arrested Littlepage. Dukes argues that Szurlinski offered misleading testimony on the law of misdemeanor arrests in Kentucky and, once the Court sets this testimony aside, there is insufficient evidence upon which the jury could have returned a guilty verdict. In his opening brief, Dukes states that, without this testimony, there was insufficient evidence that he arrested Littlepage without probable cause; in his reply brief, however, Dukes argues that the jury could not have found that he acted willfully once this testimony is excluded. Regardless of which element Dukes focuses on, his motion must fail, as Szurlinski's testimony was not misleading, and there was sufficient evidence to support his conviction on Count I even without Szurlinski's testimony on the law of misdemeanor arrests.

Dukes takes issue with the following exchange between Szurlinski and the prosecution:

> A. For a misdemeanor, the law is still the same as it's been for a very long time. For a misdemeanor offense, to make an arrest or issue a citation, the misdemeanor has to occur in that officer's presence, with some very limited exceptions.
>
> Q. Are any of those exceptions the harassing communications statute?
>
> A. No.
>
> Q. So in other words, what you would have taught was harassing communications, in order to make that arrest, it would have had to occur in the officer's presence; is that correct?
>
> A. At the time when I was teaching this slide, not directly. The exceptions would have been taught during that time.
>
> Q. Right. Sorry. I misspoke. But when you're talking about arresting for a misdemeanor, you would have taught it must occur in your presence if you wish to make a warrantless arrest; is that accurate?
>
> A. That's correct.
>
> Q. How did you define "presence" for the students?
>
> A. Generally, with presence, it's within sight, sound of the officer being there.
>
> Q. Let me ask: Would you have taught that someone telling you that someone had done something would constitute within the officer's presence?
>
> A. No.
>
> Q. Would listening to a recording of something happening have been within the officer's presence?
>
> A. No.
>
> Q. So absent the misdemeanor occurring within the sight, sound of the officer, they are not permitted to make a warrantless misdemeanor arrest; correct?

    A. With very limited circumstances.

    Q. Right. Exceptions which do not apply to harassing communications?

    A. That's correct.

(Test. Szurlinski [DN 53] at 17:9–18:17.)

  This testimony is not misleading, as it accurately states the law of misdemeanor arrests in Kentucky. *See* KRS § 431.005(1)(d) ("A peace officer may make an arrest [w]ithout a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his or her presence") (subdivisions omitted). Dukes cites to three cases that he argues undermine Szurlinski's "within sight and sound" standard, but none of them show that Szurlinski misled the jury on the physical presence requirement for effectuating a misdemeanor arrest. First, in *Commonwealth v. Mobley*, 160 S.W.3d 783, 787 (Ky. 2005), the Supreme Court of Kentucky held that an officer could make a lawful arrest for possession of drug paraphernalia, a misdemeanor, when he observed a crack pipe on the floor of the defendant's car but not actually "on" the defendant. The case turned on whether what the defendant was doing (sitting in the car in proximity to the pipe) constituted possession. Because the Court determined that it did, it concluded that the officer had observed the crime being committed in his presence, and the warrantless misdemeanor arrest was therefore lawful. This holding supports Szurlinski's testimony, as it required the officer to be within sight of the commission of the crime to legally effectuate the arrest.

  Second, Dukes cites to *Commonwealth v. Fields*, 194 S.W.3d 255 (Ky. 2006), another case that supports Szurlinski's testimony. In *Fields*, the Court determined that an officer had lawfully arrested the defendant for criminal trespass when he observed the defendant in a parking lot with no trespassing signs posted and determined that he had no legitimate business on the

property. *Id.* at 257. The officer in this case observed the defendant committing the violation, consistent with Szurlinski's testimony on the requirements of KRS § 431.005. And third, Dukes cites to *Warren v. Lexington-Fayette Urban Cty. Gov. Police Dep't*, 2017 WL 2888716 (E.D. Ky. July 6, 2017). While the facts of this case may be similar to the present case, in that an officer reviewed surveillance footage before arresting the plaintiff for criminal trespass, the court's holding does not support Dukes' contention that Szurlinski's testimony was misleading. *Warren* made clear that a violation of the statute does not negate the existence of probable cause and render the arrest unconstitutional:

> In any event, any state law requirement that "a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest . . . is not mandated by the Fourth Amendment." *Graves v. Mahoning County*, 821 F.3d 772, 778 (6th Cir. 2016) (internal quotation marks and citation omitted). Accordingly, even if the misdemeanor did not occur in Chelf's presence, this has no bearing on whether the arrest complied with the Fourth Amendment.

*Id*. at *5. This is consistent with Szurlinski's testimony. He did not assert that Dukes lacked probable cause because he was not present for the commission of the crime. Instead, he asserted that Dukes lacked probable cause because an element of the crime of harassing communications had not been met. (Test. Szurlinski [DN 53] at 23:21–24:20.) Szurlinski's testimony does not confuse the statutory requirements for making a misdemeanor arrest with the constitutional requirements, and the jury instructions further clarified that any evidence of Dukes having violated a Kentucky statute while arresting Littlepage could only inform the jury's decision on whether he acted willfully. (Jury Instructions [DN 45] at 14–15.) And contrary to Dukes' argument, *Warren* does not "hold[ ] that Officer Dukes was fully justified in relying on a tape recording of Littlepage's phone call as well as well as other witness's statements in reaching his probable cause determination." (Mot. for Directed Verdict [DN 58-1] at 5.) Instead, it merely

6

holds that the plaintiff in that case had failed to show that the officer violated KRS § 431.005 or that such a violation would even relevant to the issue of probable cause. Therefore, the Court finds that Szurlinski's testimony on the physical presence requirement for misdemeanor arrests was not misleading, as it accurately reflects the language used in KRS § 431.005, *Mobley*, and *Fields*.

However, even if the Court were to set this evidence aside, there was sufficient evidence to support Dukes' conviction on Count I. The government was required to present evidence of three elements: (1) that Dukes acted under color of law; (2) that Dukes deprived Littlepage of his right to be free from arrest without probable cause; and (3) that Dukes acted willfully. *See* 18 U.S.C. § 242. The parties did not contest that Dukes was acting under color of law when he arrested Littlepage, as he was on duty with the Providence Police Department. As to the second element of Count I, there was sufficient evidence upon which the jury could conclude that Dukes arrested Littlepage without probable cause. Harassing communications has three elements that must all be present for there to be probable cause: (1) the telephone communication must be done in a manner which causes annoyance or alarm to the recipient; (2) the call must serve no purpose of legitimate communication; and (3) the person initiating the telephone communication must do so with the intent to intimidate, harass, annoy, or alarm another person. *See* KRS § 525.080(1)(a). The government presented sufficient evidence that the second element of this crime had not been satisfied, as Szurlinski testified that Littlepage had a legitimate purpose in calling the Providence Police Department to file a complaint against Dukes. (Test. Szurlinski [DN 53] at 23:21–24:20.) Without all of the elements satisfied, there was sufficient evidence upon which the jury could conclude that Dukes lacked probable cause to arrest Littlepage for harassing communications.

7

Finally, there was sufficient evidence to satisfy the third element of Count I, as the government presented evidence that Dukes acted willfully. Szurlinski testified that he instructed Dukes on the elements of harassing communications and that all three elements must be present in order to charge someone with that crime. (Test. Szurlinski [DN 53] at 13:7–15:12.) In order to find that Dukes acted willfully, the jury was required to find that he "acted in open defiance or reckless disregard of Jeffrey Littlepage's right to be free from unreasonable seizure. In other words, the defendant acted willfully if he seized Littlepage knowing that he did not have probable cause to do so." (Jury Instructions [DN 45] at 12.) *See also Screws v. United States*, 325 U.S. 91 (1945); *United States v. Corder*, 724 F. App'x 394, 403–04 (6th Cir. 2018). The jury was entitled to find this element met based on the evidence that Dukes had been trained on the elements of harassing communications but still arrested Littlepage despite his phone calls having a legitimate purpose. Thus, the Court finds that there was sufficient evidence to support Dukes' conviction on Count I, and the motion for a directed verdict of acquittal is denied.

### B. MOTION FOR A NEW TRIAL

The Court will also deny Dukes' motion for a new trial, as he has not demonstrated that the jury's verdict went against the weight of the evidence presented at trial. The jury heard evidence that strongly indicated that Dukes lacked probable cause and acted willfully, the only two elements of Count I in dispute. In addition to Szurlinski's opinion that Dukes did not have probable cause to arrest Littlepage for harassing communications since his phone calls served a legitimate purpose, Dukes himself testified that Littlepage had a legitimate purpose in calling to complain about his conduct. Dukes stated that citizens have a right to complain about police conduct, and he specifically admitted that he gave Littlepage an unlawful order when he told Littlepage to not return to the public road on which he was driving when he was stopped. Thus,

8

Dukes' own testimony shows that Littlepage had a legitimate purpose in calling the Providence Police Department to file a complaint against him. If Littlepage had a legitimate purpose in calling, then Dukes could not have had probable cause to arrest him for harassing communications.

The evidence showing Dukes acted willfully was likewise convincing. The prosecution presented evidence demonstrating that Dukes had been trained not only on what constituted harassing communications but also on the law of misdemeanor arrests and entering a home without a warrant. By going to arrest Littlepage at his home without a warrant for harassing communications, Dukes disregarded this training. The jury properly weighed this evidence of Dukes' mental state and concluded that he had acted willfully in arresting Littlepage without probable cause. Therefore, the Court will deny the motion for a new trial.

### IV. CONCLUSION

Therefore, for the foregoing reasons, **IT IS HEREBY ORDERED** that the motion for a directed verdict of acquittal or, in the alternative, for a new trial by defendant William Dukes, Jr. (DN 58) is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 9, 2018

cc: counsel of record

9